GOVERNMENT OF GUAM, Appellee

v.

JOSE C. PANGELINAN, Appellant

Criminal No. 33-A

District Court of Guam

Appellate Division

October 18, 1965

*Counsel for Appellee:* JOHN P. RAKER, *Island Attorney*

*Counsel for Appellant:* J. U. TORRES

Before SHRIVER, *Judge*, District Court of Guam; DUE-
NAS, *Judge*, Island Court of Guam; FURBER, *Chief
Justice*, High Court of the Trust Territory of the Pacific
Islands

SHRIVER, *Judge*

OPINION

This is an appeal from the Island Court of Guam, in
which Court Jose C. Pangelinan, hereinafter called the de-
fendant, was convicted of the offense of attempted extor-
tion, as defined in Sec. 524 of the Penal Code of Guam. This

section makes it a criminal offense to attempt extortion, as defined in Sec. 519. Section 519, in part, provides

Fear, such as will constitute extortion, may be induced by a threat, either:

\* \* \*

(3) To expose or impute to him or them any deformity or disgrace; or

(4) To expose any secret affecting him or them.

The sole assignment of error is that the evidence introduced by the prosecution did not warrant conviction. We have repeatedly held that we will not disturb the findings of the lower court if there is credible evidence to support the judgment. In this case we find that there is more than adequate evidence to support the judgment and therefore we affirm.

In March, 1965, the prosecuting witness, hereinafter called the victim, was a married woman, living at Andersen Air Force Base. Her husband's first name is James. In March she received a number of telephone calls from an unidentified male, informing her that the caller wished to borrow money from her and that he had in his possession five pictures and five negatives showing her in the nude. For these he wished to borrow $50 for each picture and additional money for each negative (Tr. 3). The victim was wise enough to report these calls to a Special Investigator at Andersen who, in turn, informed the Guam Police. On March 25th she received two calls and in the last call, at 7:00 or 7:30 in the evening, the voice told her to meet him approximately at Three Kings Apartments and to watch for a flashing light, stop her car, and to turn off the lights on her car (Tr. 3). The Special Investigator was notified and told her to come right over to his house, where they waited for a Guam Police Detective. The back seat of the Volkswagen, driven by the victim, was removed and the detective concealed himself under a blanket. The victim

proceeded as directed and after a few seconds saw a flashing light. She then proceeded upon the road, apparently a private road, stopped and turned off her lights. She then saw a man come up behind and look at her. She had locked the doors and had all of the windows up except the window on the driver's side. The man flashed his light on the back seat, saw the detective, and ran.

The detective ran after him and fired two shots in the air. At no time did the victim identify the defendant as either the person who had telephoned to her or the person who had approached the automobile. The detective testified that he saw the blinking flashlight and directed the victim to drive in on the private road. He felt someone shaking the door of the car. When that person ran, the detective followed him for about 50 feet and the person went into the bushes. The detective called him to come out but he did not do so and the detective went in and found the defendant lying on his stomach with the flashlight on his right side. The detective told the defendant to come out, which he did with raised hands. The defendant asked him if he were James (the first name of the victim's husband). The detective identified himself as a police officer and the defendant said that since he was on private property and did not have a search warrant he was going to leave. For some reason the detective permitted him to do so. The detective described in detail how the defendant was dressed and the way the defendant wore his wrist watch, that the defendant had grease on his face. The detective took possession of the flashlight.

The next day the defendant, a mechanic, was picked up and taken to the police station. The detective testified unconditionally that the person who was picked up had the appearance and characteristics of the man he had seen the night before. No evidence was introduced as to what transpired at the police station but the detective testified that his

superior officer instructed him to have the defendant released, which he did. The defendant was released (Tr. 11) and complained that he was unable to obtain a ride to the point where he was picked up. The detective informed him that there would be a ride for him in a few minutes. The defendant then stated that he had made a mistake the previous night, that he was actually out hunting deer and that his flashlight was blinking and he made a deer cry, but when he saw a car coming from the highway he ran away and got scared and dropped his flashlight. This statement, which was subsequently admitted by the defendant, clearly placed the defendant at the scene.

The defendant attempted to establish the defense of alibi with the usual alibi witnesses, wife, father, and relative. The defendant contended that he was in the general vicinity for the purpose of pasturing his father's cows and that he became frightened when he heard a shot. Under cross-examination the defendant admitted the statement to the detective that he was hunting deer at night, but that he didn't have to tell the truth to the detective as he was not under oath. The testimony of the defendant's wife was equally unconvincing, but she admitted that she had seen the victim enter an apartment in front of the defendant's apartment; that she had taken the license number of the victim's car and had contacted the license section of the government of Guam to determine the ownership. Her only reason for this unusual interest was that her husband had been missing tools.

The above outline is not intended to be complete but simply to indicate the adequacy of the evidence which was before the trial court. The victim had received instructions as to where to go, she had been informed that she would be guided by a blinking flashlight. The defendant was at the location mentioned, he did blink a flashlight. He did flee and he did ask the detective if he was the victim's husband.

The defendant's testimony indicated an unusual interest in identifying the victim and we have no doubt as to the correctness of the trial court's judgment.

Both counsel advised that oral argument would be waived.